**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CRIMINAL ACTION |
| v. ) | |
| ) | No. 08-20084-01-KHV |
| SHAUN J. SALAZAR, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**MEMORANDUM AND ORDER**

On July 16, 2008, a grand jury indicted Shaun J. Salazar with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2). This matter is before the Court on defendant's Motion To Suppress Evidence (Doc. #17) filed November 6, 2008. On January 7, 2009, the Court held an evidentiary hearing. For reasons stated below, the Court sustains defendant's motion in part.

**Facts**

Based on testimony and exhibits received at the hearing, the Court finds the following facts:

On January 19, 2008, at approximately 10:00 p.m., Kansas Highway Patrol Trooper Terry Berner stopped to refuel his patrol car at a Kansas Department of Transportation lot at the northeast corner of the intersection of 59 Highway and US 24/40 Highway in Douglas County, Kansas. Trooper Berner saw a Ford pickup enter a parking area on the southeast corner of the intersection. The parking area was on the far side of a business which was closed that evening and the parking area had no other foot or vehicular traffic at that time. The pickup appeared to be turning around, but it backed up next to a commercial tree service vehicle which was stored on the lot. Trooper Berner saw the pickup headlights turn off and then saw a reflection which he thought could be an

open door on the pickup. He thought the activity "could be anything," including a person pulling into the parking lot to urinate or a person burglarizing the tree service vehicle.

One or two minutes after Trooper Berner first saw the pickup pull into the lot, he crossed the highway in his patrol car with his headlights off and drove towards the pickup. When the patrol car was approximately 75 to 100 feet from the truck, the pickup lights came on and it started to slowly pull forward in the general direction of the patrol car. Trooper Berner immediately turned on his headlights, activated his emergency lights (which were mounted on the front and back dash of his patrol car) and pulled some three feet in front to block the pickup.[1] Trooper Berner directed his spotlight at defendant, the pickup driver. At that point, defendant slowly backed up the pickup. Again, the Court cannot ascertain whether defendant could determine that he was encountering law enforcement at that time. Defendant then pulled alongside the patrol car at a slow rate of speed. Defendant applied the brakes and leaned out of the pickup window to talk to Trooper Berner, who had exited his vehicle just before defendant got to the side of the patrol car. Trooper Berner directed defendant to stop and get out of the pickup. Defendant complied.

Defendant could not produce a driver's license, and Trooper Berner arrested him for operating a vehicle without a license. In the snow by the tracks where defendant's pickup had backed up, Trooper Berner found a .38 caliber EIG revolver which was loaded with four rounds of .357 caliber ammunition. During a search of the truck, Trooper Berner also found a gray plastic

---

[1] Based on the video tape of the incident and the testimony of Trooper Berner, the Court cannot ascertain precisely when defendant recognized Trooper Berner's car as a patrol car. Because the emergency lights on the patrol car were in the dash and Trooper Berner entered the parking lot and drove toward the pickup without any headlights, the Court finds that defendant did not realize that Trooper Berner's vehicle was a patrol car until some time after it stopped in front of the pickup.

pistol case which contained a plastic box of .357 caliber ammunition.

## Analysis

Defendant argues that when Trooper Berner activated his emergency lights and blocked defendant's truck, he did not have reasonable suspicion to believe that criminal activity might be afoot. The Tenth Circuit has defined three categories of police/citizen encounters: (1) voluntary cooperation in response to non-coercive questioning, (2) investigatory and (3) arrest. United States v. Muldrow, 19 F.3d 1332, 1335 (10th Cir.) (citing United States v. Cooper, 733 F.2d 1360, 1363 (10th Cir.), cert. denied, 467 U.S. 1255 (1984)), cert. denied, 513 U.S. 862 (1994); see Terry v. Ohio, 392 U.S. 1 (1968). This case involves the second category: an investigatory or Terry stop. See United States v. Bradford, 423 F.3d 1149, 1156 (10th Cir. 2005) (traffic stops are seizures analogous to investigative detentions). The Court must evaluate (1) when Trooper Berner "seized" defendant for purposes of the Fourth Amendment and (2) whether, at that point, Trooper Berner had reasonable suspicion of criminal activity.

**I.      Timing Of Seizure Of Defendant**

The Fourth Amendment to the United States Constitution protects persons and their houses, papers and effects against unreasonable searches and seizures. See U.S. Const. amend. IV. Not all personal encounters between policemen and citizens, however, involve "seizures" of persons. Terry, 392 U.S. at 19 n.16. "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen" does a "seizure" occur for purposes of the Fourth Amendment. Id.

Defendant argues that Trooper Berner seized defendant by his "show of authority" when he activated his emergency lights and attempted to block defendant's truck because a reasonable person

would have believed that he was not free to leave at that time. See Defendant's Reply To Government's Response To Defendant's Motion To Suppress Evidence (Doc. #21) filed December 4, 2008 at 1-2 (citing United States v. Mendenhall, 446 U.S. 544, 554 (1980)). Under Kansas law, a driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police vehicle, when given a visual or audible signal to bring the vehicle to a stop, is guilty of a misdemeanor. See Kan. Stat. Ann § 8-1568(a). When a law enforcement officer activates his emergency lights, particularly in a remote area, such conduct constitutes a "show of authority" because a reasonable citizen would not feel free to leave or disregard the officer. See State v. Morris, 276 Kan. 11, 20, 72 P.3d 570, 577 (2003). Here, Trooper Berner's activation of emergency lights and attempt to block defendant's vehicle from leaving the parking lot constituted a "show of authority" – one which was all the more intimidating because Trooper Berner had driven into the parking lot on a late winter night with no headlights on.

The Supreme Court has held that a police officer's assertion of authority does not constitute a seizure unless and until the suspect actually submits. See California v. Hodari D., 499 U.S. 621, 626 (1991) (no seizure under "show of authority" because defendant did not stop in response to police pursuit). In United States v. Harris, 313 F.3d 1228 (10th Cir. 2002), cert. denied, 537 U.S. 1244 (2003), a police officer approached Harris asking him several times for his identification. Harris ignored the officer's requests and continued walking. Harris argued that the officer seized him when he began asking for identification. The Tenth Circuit held that even if the officer's requests could be construed as an "assertion of authority," Harris was not seized for purposes of the Fourth Amendment because he ignored the requests and never submitted to the assertion of authority. Id. at 1235. The Tenth Circuit noted that ultimately "a seizure requires either the use of

physical force by the police officer or submission by the individual to the police officer's assertion of authority." Id. at 1234; see also Reeves v. Churchich, 484 F.3d 1244, 1252-53 (10th Cir. 2007) (even though police asserted authority by pointing weapons and making verbal commands, no seizure because suspects did not submit to assertion of authority), cert. denied, 128 S. Ct. 1219 (2008).

Here, defendant submitted to Trooper Berner's show of authority when Trooper Berner blocked defendant's pickup from leaving the lot: defendant slowly backed up, then pulled alongside the patrol car, applied the brakes and leaned out of the pickup window to talk to Trooper Berner. Because defendant complied with Trooper Berner's show of authority, Trooper Berner "seized" defendant when he activated his emergency lights and attempted to block the pickup from leaving the parking lot.

## II.   Reasonable Suspicion Of Criminal Activity

A traffic stop constitutes a seizure for purposes of the Fourth Amendment "even though the purpose of the stop is limited and the resulting detention quite brief." Brendlin v. California, 127 S. Ct. 2400, 2406 (2007) (quoting Delaware v. Prouse, 440 U.S. 648, 653 (1979)). Law enforcement officers may stop and briefly detain a person for investigative reasons if the officer has a reasonable suspicion that criminal activity may be afoot. United States v. Sokolow, 490 U.S. 1, 7 (1989). Reasonable suspicion requires a "particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981). There must be "specific and articulable facts" to support a finding of reasonable suspicion; an "inchoate and unparticularized suspicion or 'hunch'" is inadequate. Terry, 392 U.S. at 21. In determining whether reasonable suspicion existed, the Court considers the totality of the circumstances, Sokolow,

490 U.S. at 8, including the collective knowledge of those officers involved in the investigation, United States v. Hinojos, 107 F.3d 765, 768 (10th Cir. 1997). The Court evaluates the officer's conduct "in light of common sense and ordinary human experience," deferring to "the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions." United States v. Stephenson, 452 F.3d 1173, 1176 (10th Cir. 2006) (internal quotation marks and citations omitted). The government bears the burden of proving the reasonableness of the officers' suspicion. United States v. Salzano, 158 F.3d 1107, 1111 (10th Cir. 1998); see also United States v. Lutz, 207 F. Supp.2d 1247, 1255 (D. Kan. 2002) (government must show traffic stop justified by reasonable articulable suspicion of illegal activity).

As explained above, Trooper Berner "seized" defendant for purposes of the Fourth Amendment when he activated his emergency lights and attempted to block the pickup from leaving the parking lot. At that point, Trooper Berner did not have sufficient articulable facts to reasonably conclude that defendant was involved in criminal activity. According to the government, Trooper Berner knew that (1) at 10:00 p.m., defendant pulled his truck into a parking lot next to a business which was closed; (2) the parking lot had no other activity; (3) defendant backed up in the parking lot next to a commercial tree service vehicle which was stored on the lot; (4) defendant turned off the truck headlights; and (5) as Trooper Berner approached in his patrol car, defendant turned on the truck headlights and started to leave the parking lot. These facts are insufficient, however, to satisfy the government's burden to show that Trooper Berner had reasonable suspicion that criminal activity was afoot. See City of Minot v. Johnson, 603 N.W.2d 485, 488 (N.D. 1999) (stop of defendant's vehicle based on no more than "vague hunch;" at 4:00 a.m. in area which had experienced several recent burglaries, officer saw vehicle drive around business which was closed and go into dimly lit

area behind building); State v. Donahue, 742 A.2d 775, 780-82 (Conn. 1999) (insufficient evidence for Terry stop of vehicle that turned abruptly into vacant lot of closed private club at 1:50 a.m., parked, left motor running and repositioned car so that it faced exit of building, which was located near public housing area that had been experiencing increase in drug and prostitution offenses); State v. Carter, 441 N.W.2d 640, 641-42 (Neb. 1989) (at 12:15 a.m., no reasonable suspicion to stop vehicle seen leaving office area with history of burglaries even though no businesses open and officer thought it was unusual for area to have traffic during night); People v. Freeman, 320 N.W.2d 878, 879-80 (Mich. 1982) (no reasonable suspicion for stop of car parked near darkened house at 12:30 a.m. with its lights on and motor running in private parking lot adjoining race track).

Trooper Berner had a hunch that defendant was involved in criminal activity. Accordingly, as a trained officer, he may have had enough information to justify further surveillance of the pickup. He did not, however, have enough information to establish reasonable suspicion of criminal activity.[2] See United States v. Dennison, 410 F.3d 1203, 1208 (10th Cir. 2005) (hunch that "something wasn't right" insufficient by itself to support finding of reasonable suspicion). Trooper Berner unlawfully seized defendant without reasonable suspicion. The Court therefore suppresses all evidence which Trooper Berner obtained as a result of the unlawful seizure.

To suppress evidence as "fruit of the poisonous tree," that is evidence discovered as a direct result of the unlawful activity, defendant must show the requisite factual nexus between the illegality and the challenged evidence. Wong Sun v. United States, 371 U.S. 471, 485 (1963); United States

---

[2] Trooper Berner testified that he thought that the activity of the pickup "could be anything," including an innocent reason such as a person pulling into the parking lot to urinate. Even though an officer need not rule out the possibility of innocent conduct, see United States v. Arvizu, 534 U.S. 266, 277 (2002), the officer must have a "particularized and objective basis for suspecting the particular person stopped of criminal activity." Cortez, 449 U.S. at 417-18.

v. Olivares-Rangel, 458 F.3d 1104, 1108-09 (10th Cir. 2006). Defendant asks the Court to suppress his statements, the ammunition and pistol case found in the pickup and the firearm found on the ground. Defendant's statements and the items found in the pickup are a direct result of the unlawful stop and should be suppressed. As to the firearm, defendant has not shown that Trooper Berner saw it as a direct result of the unlawful stop. Trooper Berner had a right to check the parking lot to determine if the occupants of the pickup, or someone else, had left items behind or if the tree service vehicles had been vandalized. Defendant does not dispute that he disavowed any knowledge of the firearm and he asserted no possessory right to it. Accordingly, Trooper Berner could seize the abandoned firearm.[3] See United States v. Garzon, 119 F.3d 1446, 1449 (10th Cir. 1997) (defendant lacks standing to complain of illegal seizure of property which has been abandoned); United States v. Hernandez, 7 F.3d 944, 947 (10th Cir. 1993) (warrantless seizure of abandoned property not unreasonable under Fourth Amendment).

**IT IS THEREFORE ORDERED** that defendant's Motion To Suppress Evidence (Doc. #17) filed November 6, 2008 be and hereby is **SUSTAINED in part.** The Court sustains defendant's motion as to his statements to Trooper Berner and the items found in the pickup. The Court overrules defendant's motion as to the firearm which Trooper Berner found on the ground.

---

[3] Defendant has not shown that he discarded the firearm after Trooper Berner seized him. Cf. United States v. Reed, 220 F.3d 476, 484 (6th Cir. 2000) (evidence suppressed where illegal arrest caused defendant to abandon property); United States v. Simpson, 944 F. Supp. 1396, 1404 (S.D. Ind. 1996) (evidence must be suppressed if causal nexus between police misconduct and abandonment); United States v. Foster, 566 F. Supp. 1403, 1412 (D.D.C. 1983) (abandonment that is product of police misconduct is not voluntary and cannot vitiate taint of illegal detention).

Dated this 12th day of February, 2009, at Kansas City, Kansas.

s/ Kathryn H. Vratil  
KATHRYN H. VRATIL  
United States District Judge